Mr. Milton. May it please the court. My name is David Milton and I represent the plaintiff appellant Peter Alfano. Mr. Alfano seeks a reversal of the district court's entry of summary judgment in favor of the defendant and a remand for trial. Massachusetts protective custody law allows police to hold someone in custody for up to 12 hours if he is incapacitated by alcohol, as defined by the statute. On his way into a concert in Mansfield, Mr. Alfano was stopped by security guards and led to a police compound just outside the venue. There the defendant, Lt. Lynch, had him perform field sobriety tests, then handcuffed him and placed him in protective custody. Mr. Alfano's claim is that Lt. Lynch lacked probable cause to believe that he was incapacitated and therefore violated his Fourth Amendment right to be free from unreasonable seizures. Summary judgment was improper for two reasons. One, the district court erred by granting qualified immunity on the grounds that the law was not clearly established. It was. Mr. Alfano had a clearly established Fourth Amendment right not to be taken into protective custody without probable cause. Second, the court failed to view the record on summary judgment in the light most favorable to Mr. Alfano. The court ignored facts that would allow a jury to find that Mr. Alfano was perfectly capable of attending the concert safely and that nothing in his conduct suggested otherwise. I'll discuss each of these two errors in turn. Lt. Lynch, you're moved for summary judgment. But, excuse me, just to clarify this in my mind, you have to prevail on both of those a, that probable cause was required, and b, that no objectively reasonable officer in Lynch's shoes could have believed that he had probable cause. That is correct. Okay. And we make that second determination based on viewing the facts in the light most favorable to your client, who's the non-mover. That is correct. Okay. So start with the first one. What clearly established the law that probable cause is the standard that applies before the officer can seize your fellow and put him in behind bars for 12 hours to protect himself? There's two bodies of law. There's the Massachusetts Supreme Judicial Court law. Aren't we applying federal law here? Yes, although the SJC is itself applying the Fourth Amendment. Is it? I've read Commonwealth v. O'Brien, the Lincoln case. They don't purport to be applying the Fourth Amendment. They do require probable cause, but for ought that appears in that opinion apparently as a matter of state law. The case is in, I don't know if O'Brien itself mentions the Fourth Amendment. It doesn't. The court has acknowledged that it is a Fourth Amendment seizure, and that may be in the O'Connor case that was cited by O'Brien for the probable cause standard. Regardless, the SJC could not apply less than the federal constitution requires. What do we make of the Mass Appeals Court Nickerson case, I think it was in 2011, which does not take that position at all? The Nickerson case, I think it's easy to understand, but the appeals court just made a mistake. They cited the McCaskill case. Is that a mistake that a reasonable officer is in effect entitled to get the benefit of? In other words, if the intermediate appellate court of Massachusetts does not understand that your position is the law, is that a good indication that the law is sufficiently unclear, perhaps because they were just wrong, but the law has been left in a state of muddle so that the officer would get the benefit of it on the clearly established point? I don't think so, for two reasons. First of all, a reasonable officer would look to the highest court in his jurisdiction, which is the SJC, which was not even the O'Brien case from 2001, which has not been revisited, which said plainly that it's a probable cause. But two, this is something... He can accept that first point, which is clearly correct. So, too, the appellate court, just as Souter is referring to, was required to look to the highest court. And if it got it wrong, then doesn't that suggest a reasonable person could have got it wrong? No. I note that the appeals court in Nickerson did not even cite any SJC case law. But, two, this is an example where police know much more than appellate judges, frankly. This is police procedure 101 that you cannot handcuff someone, remove them to the scene, remove them from the scene, transport them to a police station, and lock them up for five hours without probable cause. That is something that any reasonable police officer would be aware of. And so the isolated mistake in Nickerson, which is easy to trace back to the McCaffery case, another appeals court case that was applying the reasonable suspicion standard properly in the context of an investigatory stop to ask to perform field sobriety tests, that's the lineage, if you will, of that mistake, which, again, was isolated. And there are other appeals court cases cited in our brief that do properly apply the probable cause standard. And, again, the... Talk to us about the federal standard, because this is, after all, a Fourth Amendment problem, and, as I said, none of these state cases cite or purport to analyze this problem in Fourth Amendment terms. That is correct, and the federal law, I think, is crystal clear that when there is a detention that is so invasive of someone's liberty as to be the functional equivalent of an arrest, as this court and the Supreme Court have said over and over again, that that cannot be constitutional on less than probable cause. And here, again, the facts are not even close to whatever line there may be between a detention that would be okay on reasonable suspicion and one that requires probable cause. I mean, this was a full-blown custodial arrest in all but name. And so, turning to the facts, once the probable cause standard is established, the district court also failed to look at them in the light most favorable to plaintiffs. Does that mean we have to accept the plaintiff's specific testimony, i.g., e.g., I passed the alphabet test and so on? Well, may we also take into consideration in deciding what weight to give on our most favorable standard when the fellow admits that he'd had, I forget what the number was, half a dozen beers or something in the last few hours, which might perhaps affect his perception of what was going on. Do we take the beer into consideration? The jury can. This court and the district court cannot. I mean, that is a classic question. In other words, we've got to ignore, even on his own testimony, anything that would tend to, in effect, weaken the force of that testimony. Correct. The effect of alcohol on someone, it varies widely in terms of how much someone can drink and still be functionally okay. If the jury wants to infer that, oh, no one could possibly drink that much and remember anything or be safe to go to a concert, that's their prerogative. But this court can't and the district court can't. So in other words, you're saying we have to ignore it on summary judgment, but the jury, in making its ultimate factual determination, if the case gets to a jury, could take it into account? Yes, that's correct. And again, the Massachusetts protective custody statute requires two components. One, intoxication, and Mr. Alfano is not disputing that. And two, he has to meet one of four other conditions, and the one that's in play here is, is he likely to suffer or cause physical harm or damage property? And the record is bare of facts that would show that, that he was functionally limited. Again, all that Lieutenant Lynch had to suggest that the alcohol was affecting Mr. Alfano at all was his failure of the one-legged stand, which means nothing more than he could not stand on one leg for more than 15 seconds. And that, I submit, is not even close to suggesting that he couldn't attend a concert safely. And I invite the court to compare the district court's analysis of the factual record, which is very sparse and doesn't include any of the facts suggesting that Mr. Alfano was okay to attend the concert. That's at page nine of the addendum to my brief, to Plaintiff's brief. And to compare that with pages 137 and 138 of the joint appendix, which are a larger set of facts suggesting that, in fact, negating any probable cause to believe that Mr. Alfano was incapacitated. So I urge the court to reverse the judgment of the district court and remand the case for trial. Thank you. Thank you. Good morning. May it please the court, I'm Alexandra Hassel. I represent Lieutenant Thomas Lynch. And I ask that this court uphold the decision of the district court granting summary judgment on the basis of, in favor of Lieutenant Lynch, on the basis of qualified immunity. I'd like to get into the part of the decision that discusses the clearly established law. Yeah, Kim, let's start on that basis. There are a number of federal cases that involve, in a variety of contexts, custody that has the attributes of an arrest, that is, custody where the subject is detained, handcuffed, transported, and placed in a cell, those characteristics. As far as I can tell, every federal court that has considered that, has held that probable cause is required for that sort of custody to attach. Am I mistaken, or can you cite me some federal case I've overlooked? In regard to the more general concept, which is the Fourth Amendment requirement of probable cause, neither the district court, no one is in dispute that there's implications involving the Fourth Amendment. Let me ask you a very specific question. Is there any federal case? Ringett versus the City of Fall River is a district court case in Massachusetts that held that, or stated that even if the standard for the Massachusetts protective custody statute is a higher one of probable cause, in that case the seizure would still have passed muster. So even the district court has declined to establish the standard. But what did Ringett involve? It involved a protective custody. What sort of protective? See, there's a difference here. There's a difference between what's required for an officer to stop a presumably or possibly intoxicated person, subject him to tasks, ask him some questions to determine whether he's incapacitated. I don't think any of the case law suggests that probable cause would be required for that type of stop, which is analogous, I would say, to a Terry stop in the criminal context. But to go further, to actually put the man in handcuffs or shackles and transport him and hold him in a penal facility, that's what I would think requires probable cause, and I don't think Ringett says anything to the contrary. Correct, but our position is that even if probable cause is the requirement, qualified immunity would still apply based on the facts of this case. In order, in the context of qualified immunity, it needs to be shown that the existence of probable cause at the time is at least arguable. And I think the facts here, even taken in the light most favorable to Mr. Alfano, would tend to show that it's at least arguable that probable cause existed to believe he was incapacitated. What are those facts? Let's take Alfano's version of the facts. Alfano says he was coherent. Alfano was, oh, sorry. He says he was coherent. He says he was able to interact with the police. He says he was walking normally. He says he was not violent. He says that he passed all the field sobriety tests except for this one-legged stand. Alfano was stopped initially trying to enter the venue. Oh, that's true. And at that night, the record shows there were almost 20,000 people in attendance. That's true. So the fact that he was picked out by security of all of those people, I think you could reasonably infer that he was exhibiting some signs of intoxication. But I don't think the issue is whether the officer could have thought he was intoxicated. Let's assume he could. He's got to think more than that. He's got to think he is incapacitated by reason of intoxication. Right, and I believe the record states that he had consumed up to nine beers at this point. Okay. He smelled of alcohol. He had glassy eyes. He admits that he was unable to keep his balance, which in the context of the environment. Well, he was unable to keep his balance on one foot. That's correct. There's no indication he had any difficulty getting from the security area to the holding area, from the entrance to the facility to the holding area. He was escorted by two security officers. There's no indication. He didn't fall. He didn't do anything. He didn't fall. He didn't strike anybody. But that doesn't mean that he wasn't swaying just because someone falls. I think what you're saying is the officer would have taken into protective custody probably half the crowd at the Xfinity Center. Actually, that night there were only 51 protective custodies that night, and Mr. Alfano was one of them. Additionally, though he was able to converse and understand instructions being given to him, I think the fact that physically he failed the one-legs, he was unable to keep his balance and failed the one-legged stand, that could be reason to believe that he was incapacitated. Even if we accept his testimony that he passed the alphabet test, the what do you call it, the nystagmus test, that he, in fact, was coherent and responsive and he wasn't stumbling around, even if we accept that, there would have been a reasonable basis to go not to the point of concluding intoxication, but beyond that to the point of concluding what the statute requires for incapacitation. That seems like a stretch to me. Do you want to comment on that? Well, I think the other facts taken together, such that he was offered a portable breathalyzer test, which is allowed by the statute, he denied to take it. Why should he take a portable breathalyzer test when he's not driving? Because in regard to the Massachusetts statute, depending on what registers, he could have been released. But maybe he might have benefited from it, but how can you draw a negative inference from his failure to take it? Because he knew he had consumed nine beers and it was not going to help him. Sure, he admitted, I mean, there was no question here raised before or now that I know of, of intoxication, and I will assume that the breathalyzer would have shown precisely that. But intoxication does not satisfy the statute. Well, additionally, it should be noted that he could have been released to a responsible party, and, in fact, the friend, his friend Jonathan Pecor, who he came to the concert with, declined to take custody of him. Go back to Justice Souter's question. Is there anything that you would point to here that would allow a reasonable person to think he was a danger to other people at that concert? Did he strike anybody? Did he hit anybody? Did he fall on anybody? At that time, it's not in the record that he hit anyone. It's not alleged that he hit anyone or fell anyone on anyone. But he was on his way into the concert and caught the eye of the security, and when asked to perform the field sobriety tests, was not able to maintain his balance. I hear you coming back to saying he was intoxicated, but my question is, could a reasonable person have found he was a danger to others? If not, then I'm going to ask you, could a reasonable person have found, really, should we focus only in on whether he was a danger to himself? I think he could have been a danger to himself and that there was reasonable belief. That's not the test. Okay. Could have been. The question is, is there anything that would allow a reasonable police officer to think that he was a danger to others? To others in the sense that perhaps he would fall on them, bump into them, knock them over when he's able to. Did he do one of your men? It's not in the record, no. But had he been allowed to proceed into the concert, he would have been likely to. Might. Is that what you said, he might have? The standard is whether the person is likely to cause or suffer harm. I'd like to just quickly here state that even in the event that the standard is probable cause, he should still be entitled to qualified immunity in the sense that it's arguable there's an existence of probable cause. He was not shown to be plainly incompetent and he did not knowingly violate the rights as the Massachusetts Protective Custody Statute has been held to be constitutional. Thank you. Thank you.